# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| JUANITA MARTINA MEDINA, | No. CV 16-3800-PLA |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| NANCY BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

## I.
## PROCEEDINGS

Plaintiff filed this action on May 31, 2016, seeking review of the Commissioner's[1] denial of her application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before the undersigned Magistrate Judge on June 23, 2016, and July 6, 2016. Pursuant to the Court's Order, the parties filed a Joint Submission (alternatively "JS") on January 12, 2017, that addresses their positions concerning the disputed issues in the case. The Court has taken the

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy Berryhill, the current Acting Commissioner of Social Security, is hereby substituted as the defendant herein.

Joint Submission under submission without oral argument.

## II.

## **BACKGROUND**

Plaintiff was born on June 24, 1958.[2] [Administrative Record ("AR") at 137.] She has past relevant work experience as a charge nurse, and as a Social Service Worker. [AR at 27, 62.]

On July 2, 2014, plaintiff filed an application for a period of disability and DIB, alleging that she has been unable to work since May 19, 2013. [AR at 20, 137.] After her application was denied initially, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 20, 82-83.] A hearing was held on December 21, 2015, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [AR at 34-66.] A vocational expert ("VE") also testified. [AR at 60-66.] On January 22, 2016, the ALJ issued a decision concluding that plaintiff was not under a disability from May 19, 2013, the alleged onset date, through January 22, 2016, the date of the decision. [AR at 20-29.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 15-16.] When the Appeals Council denied plaintiff's request for review on April 1, 2016 [AR at 1-6], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

---

[2] On the alleged onset date, plaintiff was defined as "an individual closely approaching advanced age"; by the time of the hearing she had changed age category to "advanced age." [AR at 28 (citing 20 C.F.R. § 404.1563).]

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

**A.     THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must

determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since May 19, 2013, the alleged onset date.[3] [AR at 22.] At step two, the ALJ concluded that plaintiff has the severe impairments of lumbar spine degenerative disc disease; osteopenia; osteoarthritis of the left knee and bilateral hips; right knee disorder; and obesity. [Id.] He determined plaintiff's

---

[3] The ALJ concluded that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2018. [AR at 22.]

4

hypertension and bilateral cataracts with floaters to be non-severe. [AR at 22-23.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [AR at 23.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[4] to perform light work as defined in 20 C.F.R. § 404.1567(b),[5] "except she can occasionally perform postural activities and she needs a cane for prolonged ambulation." [Id.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is able to perform her past relevant work as a social service worker. [AR at 27, 63.] The ALJ made an alternative finding at step five that there are other jobs existing in the national economy that plaintiff is also able to perform, including work as a "doctor's receptionist" (Dictionary of Occupational Titles ("DOT") No. 237.367-038) and "medical case manager" (DOT No. 075.117-910). [AR at 28-29, 63-64.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of May 19, 2013, through January 22, 2016, the date of the decision. [AR at 29.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when he: (1) failed to consider material evidence demonstrating that plaintiff suffers from rheumatoid arthritis (alternatively "RA"); and (2) rejected plaintiff's subjective symptom testimony. [JS at 4.] As set forth below, the Court agrees with

---

[4] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

plaintiff, in part, and remands for further proceedings.

### A. FAILURE TO CONSIDER EVIDENCE OF RHEUMATOID ARTHRITIS

Plaintiff notes that in July 2013, her June 2013 rheumatology labs were described by her treating orthopedist, Shane S. Pak, M.D., as positive for elevated antinuclear antibodies ("ANA"), and increased erythrocyte sedimentation rate ("ESR").[6] [JS at 5 (citing AR at 238, 240).] In August 2013, plaintiff consulted with rheumatologist Gerald Y. Ho, M.D., who, among other things, noted that plaintiff's straight-leg raising was positive bilaterally, and her gait and stance were "Abnormal." [AR at 331.] Dr. Ho ordered a rheumatoid factor test, and noted that an injection for plaintiff's lower back was "pending." [AR at 332.] In September 2013, Dr. Pak noted that plaintiff's gait was antalgic, and that all tests for stability were "normal." [AR at 327-28.] Dr. Pak assessed plaintiff with degeneration of the lumbosacral intervertebral disc, lumbar spondylosis, lumbago, and difficulty in walking. [AR at 328.] He recommended a rheumatology consultation due to elevated ANA and increased ESR, an MRI of the lumbar spine without contrast, and facet blocks for her pain. [AR at 328-29.] In May 2014, Dr. Ho noted that test results showed that plaintiff's "Rheumatoid factor was positive," but he also stated that there was "no evidence of autoimmune disorder SLE [systemic lupus erythematosus], RA." [AR at 335-36.] On January 27, 2015, plaintiff's treating provider, Francisco G. Rodriguez, D.O., included rheumatoid arthritis on plaintiff's list of "Problems," and also included it within plaintiff's Assessment/Plan. [See, e.g., AR at 446, 450.] From that date forward, rheumatoid arthritis was always included on plaintiff's treatment visit "Problems" list. [See, e.g., AR at 446, 455, 461, 467, 473, 479, 485, 491.]

Plaintiff observes that "the ALJ's decision is completely void of any discussion regarding [plaintiff's] rheumatoid arthritis." [JS at 5.] She submits that the record as a whole indicates plaintiff suffers from rheumatoid arthritis and the error is not harmless "because rheumatoid arthritis is often associated with severe pain, not inconsistent to the pain alleged" by plaintiff. [JS

---

[6] The ANA test measures antibodies to help assess whether an individual suffers from an autoimmune disease, such as rheumatoid arthritis, and the ESR test is a blood test that can reveal inflammatory activity in the body. [JS at 5 nn. 1-2 (citations omitted).]

at 6 (citation omitted).] Consequently, the decision "lacks the support of substantial evidence as material evidence appears to have been ignored." [Id.] She further contends that the ALJ improperly focused on evidence tending to suggest non-disability. [JS at 7 (citation omitted).]

Defendant responds that although plaintiff "points to evidence supporting a diagnosis of rheumatoid arthritis, she does not point to any additional limitations warranted by that diagnosis that the ALJ failed to include in the residual functional capacity . . . finding."[7] [JS at 6 (citation omitted).] Thus, defendant contends, the ALJ did not cherry-pick the evidence in formulating plaintiff's RFC. [JS at 7.]

While an ALJ is not required to address all evidence presented to him, he must explain why significant and probative evidence has been rejected. Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (citation omitted). "[A]n explanation from the ALJ of the reason why probative evidence has been rejected is required so that . . . [the] [C]ourt can determine whether the reasons for rejection were improper." Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981) (citation omitted). Moreover, an ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the record that bolster his findings. See, e.g., Holohan v. Massanari, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others); Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) ("[T]he [ALJ]'s decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'") (citing Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998)); see also Reddick, 157 F.3d at 722-23 (it is impermissible for the ALJ to develop an evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports"); Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability."); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence.");

---

[7] Of course, plaintiff's subjective symptom testimony might provide evidence of "additional limitations." [See Discussion infra § V.B.]

7

Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.") (citation omitted); Switzer v. Heckler, 742 F.2d 382, 385-86 (7th Cir. 1984) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.").

In this case, it is undisputed that the ALJ did not discuss plaintiff's diagnosis of rheumatoid arthritis or provide any rationale for rejecting what would appear to be significant and probative evidence of that condition. Although the ALJ provided some reasons for giving "little weight" to Dr. Ho's and Dr. Pak's opinions of disability [AR at 26], he failed to explain why he did not consider what appears to be significant and probative evidence concerning plaintiff's diagnosis of rheumatoid arthritis as reflected in Dr. Ho's, Dr. Pak's, and Dr. Rodriguez' records.

In fact, a review of the ALJ's decision reflects that although the ALJ included a few of Dr. Rodriguez' treatment notes in his summary of the medical evidence [see, e.g., AR at 25], he never mentioned the weight he gave to the treating records of Dr. Rodriguez, who treated plaintiff from November 19, 2013, to November 3, 2015. Neither did he mention Dr. Rodriguez' diagnosis of rheumatoid arthritis, or other records supporting that diagnosis.

Generally, even the ALJ's summary of Dr. Rodriguez' treatment records does not withstand scrutiny. For instance, the ALJ cited to some of Dr. Rodriguez' records (as well as the records of other providers) to support his statement that the record as a whole reflected some tenderness of plaintiff's knees on examination, but also that there was generally an absence of swelling, "full range of motion, intact stability, and normal strength." [AR at 24-25 (citations omitted).] A review of Dr. Rodriguez' treatment notes, however, including those cited to by the ALJ, reflect not only knee tenderness, but *limited* range of motion of the knees [AR at 379, 393, 403, 450, 459, 489]; *irregular* gait [AR at 393, 403, 450, 459, 464, 489]; bilateral knee pain [AR at 458]; and *abnormal* motor strength.[8] [AR at 489.]

---

[8] The ALJ also incorrectly stated that plaintiff's "straight-leg-raising-tests were *always* negative . . . ," and that "her hip examinations showed full range of motion, intact stability, and full strength." [AR at 24 (emphasis added).] However, on August 26, 2013, Dr. Ho's examination reflected a positive straight-leg-raising test result [AR at 331], and Dr. Rodriguez' records clearly (continued...)

8

With respect to plaintiff's back pain, the ALJ -- citing *only* to one of Dr. Rodriguez' treatment notes -- stated that "[o]n January 27, 2015, [plaintiff] had tenderness and limited range of motion of the back but she had normal tone and motor strength." [AR at 25 (citing AR at 450).] Citing the same note, he observed that plaintiff "had an irregular gait but her cranial nerves, sensation, reflexes, and coordination were intact." [Id. (citing AR at 450).] The ALJ failed to mention Dr. Rodriguez' *many* other treatment notes reflecting decreased range of motion in the thoracolumbar area, often with guarding on forward flexion and extension. [See, e.g., AR at 380, 385, 393, 403, 408, 413, 423, 450, 459 ("*marked* decrease ROM and guarding during forward flexion and extension") (emphasis added), 483 ("*marked* decrease ROM on *all* planes. . . ") (emphasis added), 489 (same). ] In fact, it appears that the only visits where Dr. Rodriguez did not assess and/or report on plaintiff's range of motion in the lumbar spine were visits where plaintiff was complaining of and being seen for problems or symptoms unrelated to her back (or other) pain. [See, e.g., AR at 395-99 (visit to "go over . . . lab results"); 415-19 (mammogram results); 425-29 (blood in stool); 430-34 (mammography ultrasound results); 435-39 (medication refill); 440-45 (right ear pain and medication refill); 461-66 (x-ray results); 467-72 (medication refill); 473-78 (sore throat and ear pain); 491-97 (cough, fever, congestion, sore throat, and ear pain).]

Additionally, in finding that Dr. Rodirguez' treatment notes "do not support [plaintiff's] allegations of disabling symptoms," the ALJ failed to explain or provide support for his implied findings that Dr. Rodriguez' note reflecting "tenderness and limited range of motion" of the back is somehow inconsistent with "normal tone and motor strength," or that his note reflecting an irregular gait is somehow inconsistent with intact cranial nerves, sensation, reflexes, and coordination. [AR at 24-25.] Neither is there any evidence that Dr. Rodriguez found these diagnostic test results to be inconsistent. [AR at 449-52.] Thus, in addition to the ALJ's statements not providing a clear and convincing reason to discount plaintiff's subjective symptom

---

[8](...continued)
reflect *limited* range of hip motion at many of plaintiff's treatment visits. [See, e.g., AR at 379, 393, 403, 450, 458, 489.]

9

testimony,[9] they also would not provide a specific and legitimate reason to reject Dr. Rodriguez' findings. See Carmickle, 533 F.3d at 1164 (where the opinion of a treating provider is contradicted, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record). The ALJ may not substitute his lay opinion (here, in implicitly discounting Dr. Rodriguez' findings based on the ALJ's unsupported finding that limited range of motion is inconsistent with normal tone and strength, and that an irregular gait is inconsistent with intact cranial nerves, sensation, reflexes, and coordination), for that of a professional. See Tackett v. Apfel, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (ALJ erred in rejecting physicians' opinions and finding greater RFC based on claimant's testimony that he took a road trip; there was no medical evidence to support the ALJ's determination); Banks v. Barnhart, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) (noting that an ALJ "'must not succumb to the temptation to play doctor and make [his] own independent medical findings'") (quoting Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996)); Day, 522 F.2d at 1156 (an ALJ is forbidden from making his or her own medical assessment beyond that demonstrated by the record). This is exactly what the ALJ did here.

Finally, the ALJ noted that "throughout late 2014 and 2015, [plaintiff] was using a cane *sporadically*" [AR at 25 (citing nine of Dr. Rodriguez' treatment records reflecting that plaintiff was using a cane to ambulate) (emphasis added)], but then stated that "on August 5, 2015, there was no mention of cane usage, and her musculoskeletal examination was normal." [AR at 25 (citing AR at 473-77).] Not only is this a clear attempt to "cherry pick" a record to support the ALJ's nondisability finding, the statements are not even accurate -- at plaintiff's August 5, 2015, treatment visit for complaints of a sore throat, cough, and ear pain, Dr. Rodriguez clearly stated that plaintiff was ambulating with a cane. [AR at 477 ("Ambulation: ambulation with cane").] Additionally, Dr. Rodriguez did *not* state that plaintiff's musculoskeletal examination was "normal." [AR at 477.] He merely reported that there was "no cyanosis, edema, varicosities, or palpable cord" with respect to plaintiff's extremities. [Id.] As discussed above, it does not appear that Dr.

---

[9] The ALJ's treatment of plaintiff's subjective symptom testimony is discussed in section V.B, infra.

Rodriguez performed a full musculoskeletal examination when plaintiff sought treatment for non-pain related symptoms -- as she did on August 5, 2015. [See AR at 476-77.]

Because the ALJ failed to even mention plaintiff's diagnosis of rheumatoid arthritis, and to discuss the weight given to Dr. Rodriguez' findings and opinion, and because many of the ALJ's findings are not supported by substantial evidence, remand is warranted on this issue. See Marsh v. Colvin, 792 F.3d 1170, 1172 (9th Cir. 2015) (ALJ's failure to "even mention" the treating doctor and his notes and opinions was not harmless error).

### B. SUBJECTIVE SYMPTOM TESTIMONY

Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's subjective symptom testimony. [JS at 7.] She argues that her work history "cannot be ignored" when assessing her testimony as she earned "over $40,000 every year from 1992 until she stopped working in 2013." [JS at 13.] Since becoming unable to work, she has been evicted from the home she rented for more than 19 years and now lives in a homeless shelter. [JS at 13; AR at 39.] She also notes that her testimony is consistent with her rheumatoid arthritis diagnosis as discussed above. [JS at 11.]

On March 28, 2016, after the ALJ's assessment in this case, Social Security Ruling ("SSR")[10] 16-3p went into effect. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p supersedes SSR 96-7p, the previous policy governing the evaluation of subjective symptoms. Id. at *1. In SSR 16-3p the Commissioner indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation." Id. Thus, the adjudicator "will not assess an individual's overall character

---

[10] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan, 246 F.3d at 1202 n.1 (citations omitted).

11

or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." Id. at *10. Factors to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7. The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." Id. at *2.

Here, the ALJ found that plaintiff's statements about her symptoms were "not entirely credible." [AR at 24.] Specifically, he appears to have discounted her "credibility" for the following reasons: (1) the record reveals routine and conservative treatment; (2) the positive objective clinical and diagnostic findings do not reveal any acute findings and do not support more functional limitations; (3) treatment has been "generally successful in controlling" her symptoms; and (4) her activities of daily living "are not limited to the extent one would expect." [AR at 25-26.]

In light of the ALJ's review on remand of the medical evidence, plaintiff's subjective symptom testimony will also need to be reconsidered. SSR 16-3p shall apply on remand.

**VI.**

**REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter v. Astrue, 504 F.3d 1028,

1041 (9th Cir. 2007); Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004).  Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate.  See Benecke, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made.  In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings.  First, because the ALJ failed to properly consider the record relating to plaintiff's rheumatoid arthritis, the ALJ on remand shall reassess the medical evidence of record.  In assessing the medical opinion evidence of all of the providers, the ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of the opinion that the ALJ discounts or rejects, including a legally sufficient explanation for crediting one doctor's opinion over any of the others.  Second, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective allegations and either credit her testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony.  Finally, if warranted, the ALJ shall reassess plaintiff's RFC and determine at step four, with the assistance of a VE if necessary, whether plaintiff is capable of performing her past relevant work as a social services worker.[11]  If plaintiff is not so capable, or if the ALJ determines to make an alternative finding at step five, then the ALJ shall proceed to step five and determine, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the regional and national economy that plaintiff can still perform.

/

/

/

---

[11] Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to perform her past relevant work as a charge nurse.

13

**VII.**

**CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: January 30, 2017

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE